IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



| | |
|---|---|
| DONALD J. MEUCHAL, | CV 19–116–M–DLC |
| Plaintiff, | |
| vs. | ORDER |
| DAVOL, INC., C.R. BARD, PROVIDENCE HEALTH & SERVICES–MONTANA and JOHN DOES 1–5, | |
| Defendants. | |

Before the Court is the Motion to Stay All Proceedings pending Transfer to Multidistrict Litigation of Defendants C.R. Bard, Inc. and Davol, Inc. (collectively, "C.R. Bard"). (Doc. 2.) Plaintiff Donald J. Meuchal opposes the motion, asking the Court to remand this case to the state court prior to transfer to the court overseeing the multidistrict litigation ("MDL") proceeding. (Docs. 12 & 13.) Because the issue of remand depends strictly upon interpretation of Montana law, it is best resolved by this Court prior to transfer, and the Court considers it now. Finding that it lacks removal jurisdiction, the Court remands this matter to the Montana Fourth Judicial District Court, Missoula County.[1]

---

[1] Because Providence is a proper defendant, Meuchal asserts, complete diversity does not exist, and there is no federal jurisdiction. The Court notes that, following Meuchal's Motion for Entry

-1-

## BACKGROUND

Meuchal filed his Complaint in state court on January 12, 2018 and perfected service on June 13, 2019. (Docs. 1 at 5, 1-1.) He alleges injuries caused by a hernia mesh implant manufactured and marketed by C.R. Bard. (Doc. 1-1.) Specifically, Meuchal alleges that the implant migrated from his umbilicus, the site of implantation in April 2006, to his small intestine, where it implanted and became infected. (*Id.* at 4.) Meuchal underwent surgery in January 2016 to remove approximately 15 centimeters of his small intestine and the portion of the mesh implant that was removable. (*Id.* at 5.)

C.R. Bard removed this action to federal court on July 12, 2019, at which time it gave notice of the action to the Judicial Panel on Multidistrict Litigation. C.R. Bard expects that this action will be considered as part of the MDL case of *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation*, Case No. 2: 18-md-2846-EAS-KAJ (S.D. Ohio).

Meuchal brings claims for: (1) strict products liability; (2) negligence; (3) deceit; and (4) violation of the Montana Consumer Protection Act. (*Id.* at 5–9.) The products liability claim is the only claim brought against Defendant

---

of Default (Doc. 18), default was entered against Providence (Doc. 25). However, because the Court grants the motion to remand on the basis that it lacks removal jurisdiction, it must set aside default.

Providence Health & Services–Montana ("Providence"), which operates the hospital where the implant was placed.

## DISCUSSION

### I. C.R. Bard's Motion to Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Although a stay should not be granted automatically, "courts 'frequently grant stays pending a decision by the MDL panel regarding whether to transfer a case.'" *Ernyes-Kofler v. Sonofi S.A.*, No. 5:16-cv-07307-EJD, 2017 WL 813506, at *1 (N.D. Cal. March 2, 2017) (quoting *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 809 (N.D. Cal. 1998)).

Because consideration of a stay falls within the district court's discretion, there is no established Ninth Circuit precedent to guide the Court's decision. District courts generally apply an equity-balancing test, considering "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated." *Rivers v. Walt Disney Co.* 980 F. Supp. 1358, 1360 (C.D. Cal. 1997). Ultimately, a stay should

be granted if the Court, in its discretion, finds that it would "serve[] the interest of judicial economy and efficiency." *Good*, 5 F. Supp. 2d at 809.

Meuchal asks the Court to issue a ruling on its pending motion for remand prior to staying proceedings. He advocates for application of a three-part test first set forth in *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1049 (E.D. Wis. 2001). For purposes of this Order, the Court applies the *Meyers* test to determine whether it should resolve the pending motion to remand prior to staying further proceedings. First, the Court "give[s] preliminary scrutiny to the merits of the motion to dismiss," granting the motion to remand if it finds that removal was clearly improper. *Meyers*, 143 F. Supp. 2d at 1049. Second, if "the jurisdictional issue appears factually or legally difficult," the Court should consider whether similar jurisdictional issues have been or are likely to be raised in other cases transferred to the MDL proceeding. *Id.*; *see Ernyes-Kofler*, 2017 WL 813506, at *2; *Addison v. Bristol-Myers Squibb Co.*, No. C 13-02166 WHA, 2013 WL 3187859, at *1 (N.D. Cal. June 21, 2013). Third, if the second step is satisfied, the Court should consider the motion to stay, weighing "(1) the interests of judicial economy; (2) hardship and inequity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." *Meyers*, 143 F. Supp. 2d at 1049.

C.R. Bard easily overcomes the first step of the *Meyers* test, as it was not clearly improper to remove this proceeding from state court. Although complete diversity does not exist if Providence is an appropriate defendant, there is more than a colorable argument that Providence should not be named in this products liability action. At step two of the *Meyers* test, however, C.R. Bard's argument fails. There is no Montana case law on point, and so "the jurisdictional issue appears factually or legally difficult." *Id.* at 1049. It does not appear that "identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding," and so it cannot be said that judicial economy would be furthered by the MDL court in the Southern District of Ohio resolving the issue of remand, which requires interpretation of Montana products liability law. Because step two of the *Meyers* test is not satisfied, the Court does not reach the issue of whether the equities favor delaying resolution of the motion to remand. Thus, the Court will consider Meuchal's motion to remand.

## II. Motion to Remand

Meuchal moves for remand, claiming that complete diversity does not exist. C.R. Bard opposes the motion, arguing that Providence was fraudulently joined. C.R. Bard contends that: (1) Providence was not a seller of the mesh implant such that it may be held liable under Montana products liability law; and (2) even if Providence were an appropriate defendant, Meuchal's claim could not proceed

because Meuchal failed to first present his argument to the Montana Medical Legal Panel ("MMLP"). Because Montana law is unsettled on both points, the Court remands this matter to the state district court in which it was filed.

Federal courts have jurisdiction over matters arising under state law "where the matter in controversy exceeds the sum or value of $75,000" and the parties are "citizens of different states." 28 U.S.C. § 1332(a). Generally, there is no federal jurisdiction where, as here, any defendant is a resident of the same state as the plaintiff. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

"Nevertheless, one exception to the requirement of complete diversity is where a non-diverse defendant has been 'fraudulently joined.'" *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent[,]" and remand is inappropriate. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

Meuchal's only theory of liability against Providence is grounded in strict products liability. Under Montana law,

> [a] person who sells a product in a defective condition unreasonably dangerous to a user or consumer is liable for physical harm caused by the product . . . if:
>
> (a) the seller is engaged in the business of selling the product; and

(b) the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."

Mont. Code Ann. § 27-1-719(2). A "'seller' is a manufacturer, wholesaler, or retailer." Mont. Code Ann. § 27-1-719(1). Meuchal contends that Providence is a "seller" within the meaning of this provision.

Section 27-1-719 is taken nearly verbatim from the Restatement (Second) of Torts § 402A. *See McAlpine v. Rhone-Poulenc Ag. Co.*, 16 P.3d 1054, 1058–59 (Mont. 2000). Although Montana has not determined[2] whether a health care facility may be held liable under § 27-1-719, it appears that no jurisdiction currently allows such liability under § 402A. *See in re Breast Implant Product Liability Litig.*, 503 S.E.2d 445, 448–451 (S.C. 1998) (collecting cases and discrediting, as no longer good law, cases authorizing a cause of action in products liability against a health care provider); *see also Budding v. SSM Healthcare Sys.*, 19 S.W.3d 678 (Mo. 2000) (en banc); *Royer v. Catholic Med. Ctr.*, 144 N.H. 330, 334 (1999). Historically, however, a few courts have been persuaded that a products liability claim may proceed against a hospital, physician, or other medical facility or provider, even if the law of the jurisdiction later changed. *See*

---

[2] The Court cannot find any incidence of a Montana court having been asked to answer this question, perhaps because of the conclusive body of case law developed by other jurisdictions. Where plaintiffs have sued both a medical facility or provider and a pharmaceutical company or medical device manufacturer, they have alleged negligence on the part of the facility and provider, even if they bring a products liability claim against the device or drug manufacturer. *See, e.g., Stevens v. Novartis Pharms. Corp.*, 247 P.3d 244 (Mont. 2010); *Eisenmenger v. Ethicon, Inc.*, 871 P.2d 1313 (Mont. 1994).

*Karabjanian v. Thomas Jefferson Univ. Hosp.*, 717 F. Supp. 1081 (E.D. Penn. 1989); *Cunningham v. MacNeal Mem'l Hosp.*, 266 N.E.2d 897 (Ill. 1970).

The Court cannot say that "it is obvious according to the settled rules of [Montana]" that Meuchal did not state a claim against Providence. *McCabe*, 811 F.2d at 1339. Montana may well follow the majority rule, but it has not done so yet. Further, the Court notes that, according to the comments to Restatement § 402A, "public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection . . . ." Restatement (2d) of Torts § 402A cmt. 3. At minimum, this clear policy statement gives rise to a colorable argument that Montana will ultimately find that Providence, which likely imposed some markup on Meuchal's mesh implant, is in a better position than Meuchal to pay for the damages he ultimately suffered. Not only is there no established law barring Meuchal's claim against Providence, but there is some support, however slight, for his position.

Nor is the Court convinced that, as C.R. Bard argues, Providence is clearly entitled to dismissal because Meuchal did not first bring his claim before the MMLP. Under Montana Code Annotated § 27-6-701, "[n]o malpractice claim may

be filed in any court against a health care provider before an application is made to the [MMLP] and its decision is rendered." This rule exists

> to prevent where possible the filing in court of actions against health care providers and their employees for professional liability in situations where the facts do not permit at least a reasonable inference of malpractice and to make possible the fair and equitable disposition of such claims against health care providers as are or reasonably may be well founded.

Mont. Code Ann. § 27-6-102. The MMLP is concerned strictly with facts and decides only "whether there is: (1) substantial evidence that the acts complained of occurred and that they constitute malpractice; and (2) a reasonable medical probability that the patient was injured thereby." Mont. Code Ann. § 27-6-602.

Here, Meuchal does not allege a claim for medical malpractice but products liability, which is decidedly not grounded in negligence under Montana law, unlike medical malpractice (and contrary to the approach taken by many other jurisdictions under the Restatement (Third) of Torts). *See Sternhagen v. Dow Co.*, 935 P.2d 1139, 1144–47 (Mont. 1997). Montana has not determined that *all* claims against a medical facility, even those that do not sound in professional negligence, must first be brought before the MMLP. More pragmatically, as a body dedicated to determining whether "the facts . . . permit . . . a reasonable inference of malpractice," the MMLP is not well-situated to determine whether, as a legal matter, Meuchal may bring a products liability claim against Providence. Mont. Code Ann. § 27-6-102. In any event, Montana has not "settled" that a

plaintiff must bring a products liability claim before the MMLP prior to filing a lawsuit. *McCabe*, 811 F.2d at 1339.

In short, C.R. Bard has not met its "heavy burden" of showing that joinder was fraudulent. *Grancare, LLC v. Thrower ex rel. Mills*, 889 F.3d 543, 548 (9th Cir. 2018). Because "there is a possibility that [Montana] would find that the complaint states a cause of action against [Providence], [this Court] must find that the joinder was proper and remand the case to the state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009).

However, the Court will not grant Meuchal's request to order "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447. C.R. Bard's position was not unreasonable, given the lack of support in any jurisdiction for Meuchal's claim against Providence. Further, C.R. Bard's interest in defending against Meuchal's claim in the MDL proceeding is understandable; if federal jurisdiction could be found, transfer to the MDL proceeding would likely advance interests of economy and efficiency.

Accordingly, IT IS ORDERED that:

(1) The motion to stay (Doc. 2) is DENIED;

(2) The default entered against Defendant Providence Health & Services–Montana (Doc. 25) is VACATED as void for lack of jurisdiction; and

(3) The motion to remand (Doc. 13) is GRANTED, and this matter is remanded to state court. The Clerk of Court shall serve a copy of this Order and all other docket entries upon the Montana Fourth Judicial District Court, Missoula County.

DATED this 19th day of August, 2019.

*/s/ Dana L. Christensen*
Dana L. Christensen, Chief District Judge
United States District Court